1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DONELL DAVIS,

11          Petitioner,                    2:  11 - cv - 519 - MCE TJB

12     vs.

13   G.D. LEWIS,

14          Respondent.           ORDER, FINDINGS AND

15                                RECOMMENDATIONS

16   _____/

17                      I.  INTRODUCTION

18          Petitioner is a state prisoner and is proceeding *pro se* with a petition for writ of habeas

19   corpus pursuant to 28 U.S.C. § 2254.  Petitioner was convicted by a jury of robbery, simple

20   assault, false imprisonment and making criminal threats.  The charges and convictions arose out

21   of two different incidents.  The jury also found a prior conviction for robbery to be true.

22   Petitioner received an aggregate sentence of thirteen years, eight months imprisonment.

23   Petitioner raises several claims in his federal habeas petition; specifically:  (1) his Constitutional

24   rights were violated when a deputy sheriff was permitted to be seated directly behind Petitioner at

25   trial ("Claim I"); (2) trial court error in consolidating two cases and later refusing to sever them

26   ("Claim II"); (3) he was denied a right to a speedy trial ("Claim III"); (4) "Petitioner's double

1

prison terms and five-year prison term enhancement under the under the three strikes law must be

reversed because the record fails to show under the totality of the circumstances that his plea to

the prerequisite serious felony was knowingly, intelligently and voluntarily entered" (Pet'r's Pet.

at p. 52.) ("Claim IV"); (5) trial court error in improperly precluding exculpatory evidence

("Claim V"); (6) trial court error in failing to sua sponte instruct the jury on the defense of claim

of right with respect to a count of robbery ("Claim VI"); (7) trial court error in failing to instruct

the jury on the lesser included offense of attempted robbery ("Claim VII").  For the following

reasons, the habeas petition should be denied.

## II. FACTUAL BACKGROUND[1]

### A.  *Charges Involving Alisha and Sarah*

Alisha and Sarah are cousins.  The day before Easter 2005, Alisha bought wristwatches for herself and Sarah.

The following morning, Alisha and Sarah were at Alisha's apartment with defendant, who was their friend.  Sarah let defendant wear her new watch for a while, but defendant refused to return it to her when she asked for it back.  Alisha heard them arguing and told defendant to give the watch back to Sarah. Defendant said Sarah had let him wear it, but Alisha responded, "Well, she doesn't want you to wear it now, so give it back."  He complied.

Alisha returned to her bedroom, but minutes later heard Sarah and defendant arguing again.  The two were struggling as they stood next to the futon in the living room.  Defendant was trying to remove the watch from Sarah's wrist and Sarah was telling him to stop.  Defendant broke the watch's clasp and it came off Sarah's wrist.  Alisha started to walk between them and defendant took a step back.  Alisha began to walk to the door, telling defendant that he had to leave.

Defendant grabbed Alisha's arm, pushed her against the door and pinned her.  At some point during their struggle, Alisha's watch also came off.  Defendant said he was not leaving and he pushed against Alisha, ignoring Alisha cries for him to move.  Defendant said, "Do me a favor and suck my dick, and you can have your

---

[1] The factual background is taken from the Court of Appeal of California, Third Appellate District opinion filed August 19, 2008 and attached to Respondent's answer as Exhibit A (hereinafter the "Slip Op.").

watches back." When Alisha pushed defendant back, defendant grabbed her by the hair and shoved her to the floor and onto her stomach. Defendant straddled her back and, holding her hair, banged her head on the floor. He punched her shoulders and back, saying, "fuck with a real pimp." Alisha, who was crying and telling defendant to leave her alone, screamed at Sarah to get help, and Sarah left the apartment.

Defendant let go of Alisha and started to run after Sarah. When Alisha got up and ran toward her bedroom, defendant changed course and followed her, preventing Alisha from closing the bedroom door. Defendant grabbed Alisha and pushed her against a wall and into the bedroom closet. As the two struggled, defendant pinned Alisha and tried to unbutton her jeans, again saying, "fuck with a real pimp." Defendant pushed his hips against her and put his hand inside her jeans.

Alisha shoved defendant, who fell back against a coffee table. She ran out of the apartment and screamed for a neighbor. Defendant walked away from the apartment complex.

Alisha and Sarah called 911. Alisha was very upset and had difficulty speaking to the operator. When officers contacted her, Alisha was shaking. Her face was swollen, she had scratches and bruises on her neck and face, and parts of her hair weave had been ripped from her head.

A few days after the incident, defendant called Sarah and apologized to her. He said that he "would have given the watch back if [Alisha] didn't act like that."

Alisha had been in the process of moving out of her apartment when this incident occurred. About six weeks later, she found Sarah's watch in the laundry basket that she had kept in her bedroom closet.

Defendant was charged with two counts of robbery (taking the watch from Sarah and taking the watch from Alisha), one count of assault with intent to commit rape against Alisha, one count of false imprisonment of Alisha, and one count of making criminal threats to Alisha.

As trial approached, defendant telephoned Sarah several times, asking if she and Alisha would be appearing in court and again apologizing.

At trial, defendant impeached Sarah and Alisha with their criminal histories, drug use, and inconsistencies between their testimony and statements to others. He also emphasized discrepancies among various witnesses.

3

1   The jury acquitted defendant of robbing Alisha but convicted him
    of robbing Sarah.  It also convicted defendant of false
2   imprisonment and making criminal threats.  It acquitted defendant
    on the charge of assault with intent to commit rape, but convicted
3   him of the lesser included offense of simple assault.

4   B.  *Charges Involving Melissa*

5   Approximately one week after the incident with Alisha and Sarah,
    defendant and a friend boarded a light rail train headed toward
6   downtown Sacramento, Melissa was a passenger on the train.
    When defendant tried to talk to her, Melissa told him not to.
7   Defendant and his friend stood very close to Melissa and continued
    to make comments to her.  One of them said, "When a pimp walks
8   up to you – you pay attention."  Defendant said he could "make
    [her] fuck him and no one was gonna do anything about it."  He
9   said he could make her "his prostitute" and threatened to rape and
    beat her.

10
    Melissa was able to reach the intercom button and reported the
11  threats and defendant's conduct to the conductor.  As the train
    continued to move, defendant continued his threatening conduct.
12  When the train came to a stop at a downtown station, defendant
    was thrown off balance and Melissa ran off the train and to a
13  friend's nearby business.  She was crying and very upset.

14  The police talked to her and soon found defendant at a downtown
    mall.  Melissa identified him in a field line-up.
15
    Defendant told officers that he had planned to ask Melissa for her
16  phone number on the train but she was rude to him and the two of
    them exchanged comments.  He said he became "upset" and
17  "agitated," but denied standing close to Melissa, saying anything
    sexual to her, or threatening her.
18
    Defendant was charged with one count of false imprisonment and
19  one count of making criminal threats.

20  Before trial began, Melissa received multiple threatening phone
    calls from an unidentified called who knew numerous details about
21  her life.  The caller threatened to kill her if she appeared at trial.
    Melissa was put into a witness relocation program and moved out
22  of her apartment.

23  The jury convicted defendant of making criminal threats but was
    unable to reach a verdict on the false imprisonment charge.
24

25  (Slip Op. at p. 2-4.)

26  //

4

III.  PROCEDURAL HISTORY

After Petitioner was convicted and sentenced he filed an appeal to the California Court of Appeal which raised the issues included in his federal habeas petition amongst others.  The California Court of Appeal affirmed the judgment.  Petitioner then filed a petition for review to the California Supreme Court which raised the issues asserted in this federal habeas petition amongst others.  The California Court of Appeal summarily denied the petition for review on November 18, 2008.

Petitioner then filed a state habeas petition in the California Superior Court, Sacramento County in September 2009.  The Superior Court denied the state habeas petition in a written decision on November 9, 2009.  Petitioner's state habeas petitions to the California Court of Appeal and the California Supreme Court were each summarily denied on January 7, 2010 and September 29, 2010 respectively.

Petitioner filed his federal habeas petition in February 2011.  Respondent answered the petition in August 2011.  Petitioner received three extensions of time to file a traverse until March 31, 2012.  No traverse was ever filed.

IV.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

An application for writ of habeas corpus by a person in custody under judgment of a state court can only be granted for violations of the Constitution or laws of the United States.  See 28 U.S.C. § 2254(a); see also Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1994); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)). Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies.  See Lindh v. Murphy, 521 U.S. 320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim decided on the merits in the state court proceedings unless the state court's adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2)

1  resulted in a decision that was based on an unreasonable determination of the facts in light of the

2  evidence presented in state court.  See 28 U.S.C. § 2254(d).

3      As a threshold matter, a court must "first decide what constitutes 'clearly established

4  Federal law, as determined by the Supreme Court of the United States.'"  Lockyer v. Andrade,

5  538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)).  "'[C]learly established federal law'

6  under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court

7  at the time the state court renders its decision.'"  Id. (citations omitted).  Under the unreasonable

8  application clause, a federal habeas court making the unreasonable application inquiry should ask

9  whether the state court's application of clearly established federal law was "objectively

10  unreasonable."  See Williams v. Taylor, 529 U.S. 362, 409 (2000).  Thus, "a federal court may

11  not issue the writ simply because the court concludes in its independent judgment that the

12  relevant state court decision applied clearly established federal law erroneously or incorrectly.

13  Rather, that application must also be unreasonable."  Id. at 411.  Although only Supreme Court

14  law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in

15  determining whether a state court decision is an objectively unreasonable application of clearly

16  established federal law.  See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only

17  the Supreme Court's precedents are binding . . . and only those precedents need be reasonably

18  applied, we may look for guidance to circuit precedents.").

19                    V.  ANALYSIS OF PETITIONER'S CLAIMS

20      A.  Claim I

21      In Claim I, Petitioner asserts that his Constitutional rights to due process and a fair trial

22  were violated when a deputy sheriff was permitted to sit directly behind Petitioner during trial.

23  The last reasoned decision on this Claim was from the California Court of Appeal on direct

24  appeal which stated the following:

25              Defendant challenged the seating arrangement in the courtroom,
            asserting that the positioning of a sheriff's officer directly behind
26              him, without any manifest need, conveyed an impression of

                                        6

dangerousness to the jury and violated his constitutional right to due process and fair trial.  The trial court noted that there had been evidence of threats made to a witness, and declined to order the sheriff to sit farther away from defendant, leaving the positioning of security personnel up to the sheriff's department.  The court did, however, order all parties to remain seated when the jury entered or left the courtroom in order to eliminate any possibility that the jury might draw the wrong impression if defendant stood and the sheriff's officer moved in response.

On appeal, defendant compared his situation to that of a shackled defendant, and asserts that the court erred in permitting the sheriff's officer to sit close by without any manifest need for such proximity.  Defendant's claim is unpersuasive.

Initially, we note that the record does not definitively indicate where the sheriff was seated in relationship to defendant and his attorney.  Defense counsel stated that the escort officer sat "directly behind" defendant and "preclude[d] folks, even me, . . . from walking between the defendant and the deputy."  It is unclear exactly how close to defendant the officer sat, or whether people were precluded from walking between defendant and the officer by virtue of the physical arrangement or because the officer ordered people not to pass between them.

In any event, defendant's claim is predicated on a faulty analogy: the positioning of courtroom security does not implicate the same concerns as the physical restraint of a prisoner.

"[A] defendant cannot be subjected to physical restraints of any kind in the courtroom while in the jury's presence, unless there is a showing of manifest need for such restraints."  (People v. Duran (1976) 16 Cal.3d 282, 290-291.)  "Manifest need" is demonstrated by a showing of unruliness, an announced intention to escape, or '[e]vidence of any nonconforming conduct or planned nonconforming conduct which disrupts or would disrupt the judicial process if unrestrained . . . .'"  (People v. Cox (1991) 53 Cal.3d 618, 651.)

However, the Duran court also noted, "We are not here concerned with the use of armed guards in the courtroom.  Unless they are present in unreasonable numbers, such presence need not be justified by the court or the prosecutor."  (People v. Duran, supra, 16 Cal.3d at p. 291, fn. 8.)  In People v. Marks (2003) 31 Cal.4th 197, the California Supreme Court emphasized this long-standing distinction between shackling and the positioning security personnel, even when officers are stationed in an unusual manner in the courtroom.  (Id. at pp. 223-224.)  "[C]ourtroom monitoring by security personnel does not necessarily create the prejudice created by shackling."  (Ibid.)  The court declined to impose the manifest need standard for the positioning of security inside the

courtroom.  (<u>Id.</u> at p. 269.)

The United States Supreme Court reached the same conclusion in <u>Holbrook v. Flynn</u> (1986) 475 U.S. 560 [89 L.Ed.2d 525], and refused to find the deployment of security personnel in the courtroom "the sort of inherently prejudicial practice, that, like shackling, should be permitted only where justified by an essential state interest."  (<u>Id.</u> at pp. 568-569 [89 L.Ed.2d at p. 534].)  The court noted that the presence of guards in a courtroom gives rise to a wider range of inferences than inherently prejudicial practices. "While shackling and prison clothes are unmistakable indications of the need to separate a defendant from the community at large, the presence of guards at a defendant's trial need not be interpreted as a sign that he is particularly dangerous or culpable.  Jurors may just as easily believe that the officers are there to guard against disruptions emanating from outside the courtroom or to ensure that tense courtroom exchanges do not erupt into violence.  Indeed, it is entirely possible that the jury will not infer anything at all from the presence of the guards. . . .  Our society has become inured to the presence of armed guards in the most public places; they are doubtless taken for granted so long as their numbers or weaponry do not suggest particular official concern or alarm."  (<u>Id.</u> at p. 569 [89 L.Ed.2d at pp. 534-535].)

The Court also noted that security officers "placed at some distance from the accused . . . may well be perceived more as elements of an impressive drama than as reminders of the defendant's special status."  (<u>Holbrook v. Flynn</u>, <u>supra</u>, 475 U.S. at p. 569 [89 L.Ed.2d at p. 535].)  Defendant seizes this language to suggest that distance from the defendant is a necessary requirement.  The Court did not establish such a hard-and-fast rule.  Rather than presuming prejudice from the presence of security personnel in the courtroom, the <u>Holbrook</u> court concluded that a case-by-case approach was appropriate.  (<u>Ibid.</u>)  Just as <u>Holbrook</u> refused to find the presence of four uniformed state troopers inherently prejudicial (<u>id.</u> at p. 570 [89 L.Ed.2d at pp. 535-536], we will not presume prejudice from the proximity of one security officer to defendant.

Here, the trial court noted that threats had been made against one of the trial witnesses, and it declined to order the sheriff to sit farther away from defendant.  Defendant has not demonstrated any abuse of discretion, much less any prejudice, and we perceive none.  There was no error.

(Slip Op. at p. 7-9.)

At the outset, Respondent argues that the portion of Claim I that relies on the Sixth Amendment is unexhausted.  More specifically, Respondent argues that Claim I relies on the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, but that Petitioner

8

only based Claim I in his petition for review to the California Supreme Court on the Fifth and Fourteenth Amendments.

A petitioner who is in state custody and wishes to collaterally challenge his conviction by a petition for writ of habeas corpus must exhaust state judicial remedies.  See 28 U.S.C. § 2254(b)(1).  The exhaustion doctrine is based on comity to the state court and gives the state court the initial opportunity to correct the state's alleged constitutional deprivations. See Coleman v. Thompson, 501 U.S. 722, 731 (1991).  A petitioner can satisfy the exhaustion requirement by providing the highest state court with a full and fair opportunity to consider each claim before presenting it to the federal court.  See Duncan v. Henry, 513 U.S. 364, 365 (1995) (per curiam); Picard v. Connor, 404 U.S. 270, 276 (1971).  A federal court will find that the highest state court was given a full and fair opportunity to hear a claim if the petitioner has presented the highest state court with the claim's factual and legal basis.  See Duncan, 513 U.S. at 365.  The Petitioner must specifically tell the state court that he was raising a federal constitutional claim.  See id. at 365-66; Lyons v. Crawford, 232 F.3d 666, 669 (9th Cir. 2000), amended by, 247 F.3d 904 (9th Cir. 2001).

In Duncan, the United States Supreme Court reiterated the rule as follows:

> In Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 . . . (1971), we said that exhaustion of state remedies that petitioners "fairly presen[t]" federal claims to the state courts in order to give the State the "'opportunity to pass upon and correct' alleged violations of the prisoners' federal rights" (some internal quotation marks omitted).  If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.  If a habeas petitioner wishes to claim that an evidentiary hearing at a state court trial denied him due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court.

Duncan, 513 U.S. at 365-66.  The Ninth Circuit examined the rule further in Lyons, 232 F.3d at 668-69 by stating:

> Our rule is that a state prisoner has not "fairly presented" (and thus

9

exhausted) his federal claims in state court unless he specifically indicated to that court that those claims were based on federal law. See Shumway v. Payne, 223 F.3d 982, 987-88 (9th Cir. 2000). Since the Supreme Court's decision in Duncan, this court has held that the petitioner must make the federal basis of the claim explicit either by citing federal law or the decisions of federal courts, even if the federal basis is "self-evident," Gatlin v. Madding, 189 F.3d 882, 889 (9th Cir. 1999) (citing Anderson v. Harless, 459 U.S. 4, 7 (1982), or the underlying claim would be decided under state law on the same considerations that would control resolution of the claim on federal grounds, see, e.g., Hiivala v. Wood, 195 F.3d 1098, 1106-07 (9th Cir. 1999) . . . In Johnson, we explained that the petitioner must alert the state court to the fact that the relevant claim is a federal one without regard to how similar the state and federal standards for reviewing the claim may be or how obvious the violation of federal law is.

In this case, Respondent does not argue that all of Claim I is unexhausted, only the portion of Claim I that relies on the Sixth Amendment. The petition for review specifically mentions the Fifth and Fourteenth Amendments. The petition for review to the California Supreme Court also cited to Holbrook v. Flynn, 475 U.S. 560 (1986). In Holbrook, the Supreme Court "held that some courtroom security did not violate defendant's Sixth Amendment right to receive a fair trial." Woods v. Dugger, 923 F.2d 1454, 1456 (11th Cir. 1991). Accordingly, the California Supreme Court was on sufficient notice that Claim I also encompassed the Sixth Amendment in addition to the Fifth and Fourteenth Amendments. Thus, Claim I is deemed fully exhausted.

"Central to a defendant's Fourteenth Amendment right to a fair trial is the principle that one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on the grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial." Holbrook, 475 U.S. at 567. Some practices, like forcing a defendant to wear prison clothing or shackles are at odds with this principle. See Estelle v. Willaims, 425 U.S. 501, 503-04 (1976). Nevertheless, this right is not absolute and sometimes restrictive measures or noticeable security is needed. See Holbrook, 475 U.S. at 567-68.

In Holbrook, the Supreme Court addressed the question of "whether a criminal defendant

10

1    was denied his constitutional right to a fair trial when, at his trial with five codefendants, the

2    customary courtroom security force was supplemented by four uniformed troopers sitting in the

3    first row of the spectator's section." 475 U.S. at 562.  The Court held that it could not find an

4    unacceptable risk of prejudice in that case.  See id. at 571.  It continued by explaining that,

5    "[u]nlike a policy requiring detained defendants to wear prison garb, the deployment of troopers

6    was intimately related to the State's legitimate interest in maintaining custody during the

7    proceedings." Id. at 572.

8          The Ninth Circuit recently analyzed Holbrook in Hayes v. Ayers, 632 F.3d 500 (9th Cir.

9    2011).  At issue in Hayes was whether security screening of everyone who entered the courtroom,

10   including prospective jurors denied a petitioner due process and a right to a fair trial.  See id. at

11   521.  The Ninth Circuit then explained that:

12         Holbrook v. Flynn, 475 U.S. 560 (1986), which the California
           Supreme Court expressly considered in affirming Hayes's
13         conviction, establishes whether courtroom security measures
           violate a defendant's right to a fair trial.  We must first "look at the
14         scene presented to jurors and determine whether what they saw
           was so inherently prejudicial as to pose an unacceptable threat to
15         defendant's right to a fair trial." Holbrook, 475 U.S. at 572.  In
           assessing inherent prejudice, the question is "whether an
16         unacceptable risk is presented of impermissible factors coming into
           play" in the jury's evaluation of the defendant. Id. at 570.  If
17         security measures are not found to be inherently prejudicial, a court
           then considers whether the measures actually prejudiced members
18         of the jury. Id. at 572.  "[I]f the challenged practice is not found
           inherently prejudicial and if the defendant fails to show actual
19         prejudice, the inquiry is over." Id. . . . .

20         In Holbrook, the Court concluded that the presence of uniformed
           security officers sitting behind the defendants at trial was not
21         inherently prejudicial.  The court distinguished cases where
           defendants were shackled or required to appear in prison garb
22         before the jury:

23               The chief feature that distinguishes the use of
                 identifiable security officers from courtroom
24               practices we might find inherently prejudicial is the
                 wider range of inferences that a juror might
25               reasonably draw from the officers' presence.  While
                 shackling and prison clothes are unmistakable
26               indications of the need to separate a defendant from

> the community at large, the presence of guards at a
> defendant's trial need not be interpreted as a sign
> that he is particularly dangerous or culpable.  Jurors
> may just as easily believe the officers are there to
> guard against disruptions emanating from outside
> the courtroom or to ensure that tense courtroom
> exchanges do not erupt violence.  Indeed, it is
> inherently possible that the jurors will not infer
> anything at all from the presence of the guards . . . .
> Our society has become inured to the presence of
> armed guards in most public places; they are
> doubtless taken for granted so long as their numbers
> or weaponry do not suggest particular official
> concern or alarm.  475 U.S. at 569.

Hayes, 632 F.3d at 521-22.  Ultimately, in Hayes, the Ninth Circuit determined that the

placement of deputies inside and outside the courtroom was not inherently prejudicial and the

petitioner failed to show that he was actually prejudiced by the security measures.  See id. at 522.

Similar to Holbrook and Hayes, Petitioner is not entitled to federal habeas relief on this

Claim.  First, as previously explained, Petitioner does not assert that he was shackled or in prison

garb when he was seen by the jury.  Additionally, the presence of an officer behind Petitioner

during trial need not necessarily be interpreted as a sign that Petitioner was inherently dangerous

or culpable.  The jurors may have just as easily believed the guard was there to protect Petitioner

from any disruptions in the courtroom.  See Holbrook, 475 U.S. at 569.  Furthermore, Petitioner

failed to show that any of the jurors were actually influenced by an officer being seated

immediately behind Petitioner.  See Hayes, 632 F.3d at 522.  Accordingly, Petitioner fails to

show that the state court adjudication of this Claim was an unreasonable application of clearly

established federal law.[2]

---

[2] Petitioner attached a declaration from his trial counsel dated March 17, 2010 to his
federal habeas petition.  In it, she declared the relative seated position of the sheriff during
Petitioner's trial.  However, as Respondent notes, the Supreme Court has recently held that
federal habeas corpus review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was
before the state court that adjudicated the claim on the merits" and "that evidence introduced in
federal court has no bearing on" such review.  Cullen v. Pinholster, 131 S.Ct. 1388, 1398, 1400
(2011).  Thus, trial counsel's declaration has no bearing on deciding whether Petitioner is entitled
to federal habeas relief pursuant to 28 U.S.C. § 2254(d).

B.  Claim II

In Claim II, Petitioner argues that the trial court violated Petitioner's rights to a fair trial and to due process when it consolidated the cases arising from the charges related to Alisha/Sarah and Melissa and further violated these rights when the court refused to sever them. More specifically, Petitioner asserts that, "[c]onsolidation and failure to sever the counts resulted in the joining of the two weak cases such that the spillover effect likely altered the outcome of each count in which petitioner suffered conviction." (Pet'r's Pet. at p. 25.)  The last reasoned decision on this Claim was from the California Court of Appeal on direct appeal which stated the following:

> Defendant contends that the trial court erred in consolidating the two cases against him and later refusing to sever them.  We disagree.
>
> When the prosecutor filed a motion to consolidate the case involving Melissa with the case involving Alisha and Sarah, defense counsel raised numerous arguments in opposition.  She asserted that the prosecution was attempting to join two weak cases, and that evidence would not be cross-admissible in separate trials.
>
> The trial court disagreed, finding that neither case was particularly weak or strong, and that the evidence in both cases might be cross-admissible to show a common plan or scheme under Evidence Code section 1101.
>
> Defense counsel protested that she was ready to proceed in the case involving Melissa but was unprepared in the other matter, and that defendant was being forced to choose between his constitutional right to speedy trial and right to effective assistance of counsel. The court responded that the right to effective assistance of counsel was paramount and offered to continue the matter if needed.
>
> Trial was in fact continued, and six months later defendant made a motion to sever the cases.  This time, counsel argued that the case involving Melissa was significantly stronger than that involving Alisha and Sarah.  She asserted she was ready to go to trial on the Alisha/Sarah case, but needed more time to prepare for the other. The trial court denied defendant's motion to sever the cases.  It ruled that neither case was more inflammatory than the other, and that each had its relative strengths and weaknesses.  The court also commented that there were many theories under which the evidence might be cross-admissible.

13

On appeal, defendant acknowledges that joinder of his cases was legally permissible (see § 954 [joinder proper when cases involve same class of crimes]), but he asserts that the court abused its discretion in permitting the cases to be tried together because consolidation was highly prejudicial.

The California Supreme Court recently reiterated that "because consolidation or joinder of charged offenses ordinarily promotes efficiency, that is the course of action preferred by the law." (Alcala v. Superior Court (2008) 43 Cal.4th 1205, 1220.)  "A trial court's denial of a motion of severance of charged offenses amounts to a prejudicial abuse of discretion if the "'trial court's ruling "'falls outside the bounds of reason."'"' [Citation.]  In making that assessment, we consider the record before the trial court when it made its ruling. [Citation.]  "The factors to be considered are these:  (1) the cross-admissibility of the evidence in separate trials; (2) whether some of the charges are likely to unusually inflame the jury against the defendant; (3) whether a weak case has been joined with a strong case or another weak case so that the total evidence may alter the outcome of some or all of the charges; and (4) whether one of the charges is a capital offense, or the joinder of the charges converts the matter into a capital case.'" [Citations.] 'The state's interest in joinder gives the court broader discretion in ruling on a motion for severance than it has in ruling on admissibility of evidence.'" (Id. at pp. 1220-1221.)

We turn to the three factors relevant to this appeal.  (The fourth factor, the conversion of a noncapital offense into a capital case, is inapplicable.)

A.  *Cross-Admissibility*

As the California Supreme Court summarized, "We frequently have observed that if evidence underlying the offense in question would be 'cross-admissible' in separate trials of other charges, that circumstance normally is sufficient, standing alone, to dispel any prejudice and justify a trial court's refusal to sever the charged offenses.  [Citations.]  Our cases, however make it clear that complete (or so-called two-way) cross-admissibility is not required.  In other words, it may be sufficient, for example, if evidence underlying charge 'B' is admissible in the trial of charge 'A' – even though evidence underlying charge 'A' may not be similarly admissible tin the trial of charge 'B.' [Citations.]  Our decisions also make clear that even the complete absence of cross-admissibility does not, by itself, demonstrate prejudice from a failure to order a requested severance.  We repeatedly have found a trial court's denial of a motion to sever charged offenses to be a proper exercise of discretion *even when the evidence underlying the charges would not have been cross-admissible in separate trials.* [Citations.]" (Alcala v. Superior Court, supra, 43 Cal.4th at

p. 1221, see also § 954.1 [cross-admissibility not a prerequisite for joining cases].)

The prosecutor asserted that the evidence from these two cases would be cross-admissible under Evidence Code section 1101 to prove a common plan or scheme.  In both cases, defendant referred to himself as a "pimp" and threatened to sexually assault his women victims.  As the prosecutor noted, "Two times in 4 days the Defendant has become assaultive with women and demanded sex in a very distinct way."  Defendant's comments and behavior are sufficiently distinctive to establish a common plan or scheme, and evidence from the two cases would be cross-admissible on that basis.

Defendant contends that this evidence would have been excessively prejudicial and therefore would have been excluded under Evidence Code section 352.  Defendant relies on the wrong test for demonstrating prejudice.

"[A]lthough in the context of evidence of *uncharged* offenses offered at trial, a court conducts an assessment concerning prejudice under Evidence Code section 352 [citation], by contrast, in the context of properly joined offenses, 'a party seeking severance must make a *stronger* showing of potential prejudice than would be necessary to exclude other-crimes evidence in a severed trial' [citation].  In the context of properly joined offenses, we assess potential prejudice not under Evidence Code section 352, but instead in the context of the traditional four factors outlined above:  cross-admissibility of charges; tendency of the charges to inflame the jury; the bolstering of a weak case; and the conversion of noncapital charges into a capital case."  (Alcala v. Superior Court, supra, 43 Cal.4th at p. 1222, fn. 11.)

Moreover, since cross-admissibility is not a prerequisite for joinder of cases (§ 954.1), defendant's reliance on this factor is misplaced.

B. *Inflammatory Evidence*

Defendant contends that the charges of robbery and assault with intent to commit rape in the case involving Alisha and Sarah were unusually likely to inflame the jury against defendant.  After considering the prosecutor's offer of proof, the court concluded that neither case was more inflammatory than the other.

That ruling was well within the court's discretion.  One case began as an argument with friends over a watch and quickly evolved into assaultive and threatening conduct; the other case involved unprovoked threatening behavior against a stranger, a passenger on a light rail train.  While the attack on Alisha progressed beyond that on Melissa, the court acted well within its discretion in concluding that neither case was more likely to inflame the jury

than the other.

C.  *The Bolstering of a Weak Case*

Defendant contends that both cases were weak, and consolidating the cases strengthened both of them.

We note that defendant took a somewhat different tack when arguing for severance:  he argued that the case involving Sarah and Alisha was significantly weaker than the case involving Melissa and presenting the cases together would bolster the weak case.  The prosecutor argued that both cases were strong.  In the initial motion for consolidation, the prosecutor pointed out that Melissa had described the assault in detail, identified defendant immediately, and had no bias or motive for fabricating her report.  Alisha and Sarah also made immediate reports and photographs of Alisha corroborated her injuries.  Given these offers of proof, the trial court properly concluded that both cases had their strengths and weaknesses, and that consolidation did not improperly bolster one case with another.  In sum, defendant cannot demonstrate that the trial court abused its discretion in consolidating these cases and refusing to sever them.  There was no error.

Defendant's related arguments are equally unavailing.  Defendant contends that consolidation meant that he was required to choose between his right to speedy trial and his right to the effective assistance of counsel.  Courts have often commented on the inherent tensions between these two rights.  (See People v. Frye (1998) 18 Cal.4th 894, 938-940 and cases cited therein.)  But 'hard choices are not unconstitutional." (Id. at p. 940; see also People v. Kiney (2007) 151 Cal.App.4th 807, 814 [Constitution does not preclude requiring defendant to choose between competing rights if election does not impair "to an appreciable extent" the policies behind these rights].)  Here, defendant's own actions removed any potential conflict.  Rather than asserting his right to a speedy trial or moving to dismiss his case for violation of this right, defendant instead waived time.  By consenting to continuances, defendant removed any conflict between his right to speedy trial and right to competent counsel.  (People v. Frye, supra, 18 Cal.4th at p. 939; see also People v. Seaton (2001) 26 Cal.4th 598, 633-634.)

Defendant suggests that consolidation deprived him of the right to testify in one case but not the other.  He adds that although this "may have been an insufficient reason to not consolidate the counts because counsel and [defendant were not in a position to determine whether he would be able to testify at that point, the issue nevertheless bears on actual prejudice[.]"  Prejudice cannot be established through conjecture.  Defendant did not testify, and his clams about what his testimony might have established are entirely speculative.

1  (Slip Op. at p. 4-7.)

2         First, Respondent asserts that to the extent that Claim II encompasses an argument that

3  Petitioner's due process rights were violated, it is unexhausted.  In support of this argument,

4  Respondent argues that Petitioner's petition for review to the California Supreme Court did not

5  claim that he was denied his federal Constitutional right to due process.  Respondent's lack of

6  exhaustion argument is unavailing under these circumstances.  By way of example, the petition

7  for review cites to Williams v. Superior Court 36 Cal. 3d 441, 204 Cal. Rptr. 700, 683 P.2d 699

8  (1984).  In Williams, 36 Cal. 3d at 448, 204 Cal. Rptr. 700, 683 P.2d 699 (emphasis added), the

9  California Supreme Court explained that "the joinder laws must never be used to deny a criminal

10  defendant's fundamental right to *due process* and a fair trial."  Thus, under these circumstances,

11  to the extent Claim II includes a due process argument, it is deemed exhausted.  See Peterson v.

12  Lampert, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc) ("[F]or purposes of exhaustion, a

13  citation to a state case analyzing a federal constitutional issue serves the same purpose as a

14  citation to a federal case analyzing such issue.").

15         To the extent that Petitioner relies on state law to support his misjoinder argument, the

16  argument is not cognizable on federal habeas review.  See Estelle v. McGuire, 502 U.S. 62, 67-

17  68 (1991) (stating that "it is not the province of a federal habeas court to reexamine state-court

18  determinations of state-law questions").  In United States v. Lane, 474 U.S. 438 (1986), the

19  Supreme Court stated that misjoinder of charges rises to the level of a constitutional violation "if

20  it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial."

21  Id. at 446 n. 8.  Petitioner asserts that his Constitutional rights were violated because:

22              the evidence would not have been cross-admissible in separate
               trials; certain of the charges were unusually likely to inflame the
23              jury against [P]etitioner; two weak cases were being joined such
               that the spillover effect of the aggregate evidence might alter the
24              outcome of some or all of the charges, and; consolidating the cases
               would deny [P]etitioner his right to testify in one case but not the
25              other.

26

(Pet'r's Pet. at p. 23.)[3]

Error "involving misjoinder 'affects substantial rights' and requires reversal only if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence in determining the jury's verdict.'"[4]   Lane 474 U.S. at 449 (quoting Kotteakos v. United States,

---

[3] Within his improper consolidation/failure to sever arguments, Petitioner also alludes to a possible violation of his speedy trial rights.  This issue will be discussed in Claim III.

[4] Respondent argues in his Answer that there is no direct United States Supreme Court precedent that clearly establishes that the purported misjoinder of charges in this case offends the United States Constitution.  In Collins v. Runnels, 603 F.3d 1127 (9th Cir. 2010), cert. denied, 131 S.Ct. 243 (2010), the Ninth Circuit analyzed "whether clearly established Supreme Court precedent binding on the states requires trial severance where a co-defendant presents a mutually antagonistic defense."  Id. at 1128.  The Ninth Circuit then analyzed Lane and stated the following:

> Lane dealt with the joinder of standards under Federal Rules of Criminal Procedure 8 and 52; no constitutional issue was before the Court.  "[T]he phrase 'clearly established Federal law, as determined by the Supreme Court of the United States' . . . refers to holdings, *as opposed to dicta*, of this Court's decisions as of the time of the relevant state-court decision."  Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389  (2000) (emphasis added).  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71-72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).  The footnote upon which Collins relies did not set forth the governing legal principle in Lane.  It was merely a comment.
>
> When the Supreme Court does not purport to interpret any provision of the Constitution, then "[t]hat alone would be enough to defeat a claim that [the] application [of the case] to state-court proceedings is 'clearly established.'"  Early v. Packer, 537 U.S. 3, 10, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam).  Here, Lane expressly stated that "[i]mproper joinder does not, in itself, violate the Constitution."  474 U.S. at 446 n.8, 106 S.Ct. 725.  Collins argument that Lane applies to state courts fails for that reason.

Id. at 1132.  Thus, the Ninth Circuit held that Lane did not "establish a constitutional standard binding on the states requiring severance in cases where defendants present mutually antagonistic defenses."  Id. at 1132-33.  This Court need not and declines to reach the issue of whether Lane clearly established that the improper consolidations/denial of the severance motion could offend the United States Constitution.  As detailed infra, even if Lane did so "clearly establish," Petitioner's claim would still fail on the merits because he failed to show that the purported

1   328 U.S. 750, 776 (1946)).  Relief is available for improper consolidation only if the

2   "simultaneous trial of more than one offense . . . actually render[ed] petitioner's state trial

3   fundamentally unfair and hence, violative of due process." Featherstone v. Estelle, 948 F.2d

4   1497, 1503 (9th Cir. 1991) (internal quotation marks and citation omitted); see also Davis v.

5   Woodford, 384 F.3d 628, 638 (9th Cir. 2004) ("The requisite level of prejudice is reached only if

6   the impermissible joinder had a substantial and injurious effect or influence in determining the

7   jury's verdict.") (internal quotation marks and citation omitted).  In evaluating the prejudice

8   suffered by the Petitioner, the focus is "particularly on [the] cross-admissibility of evidence and

9   the danger of 'spillover' from one charge to another, especially where one charge or set of

10  charges is weaker than another." Id.  The reason that there is danger in this situation "is that it is

11  difficult for a jury to compartmentalize the damaging information." Sandoval v. Calderon, 241

12  F.3d 765, 772 (9th Cir. 2000).

13          In this case, the possibility that the jury's passion was inflamed by the introduction of

14  evidence involving the other incident in one trial is dispelled by the jury's failure to convict

15  Petitioner on counts 2 and 7 as well as convicting Petitioner of the lesser included offense of

16  simple assault on count 3 as opposed to the greater charged offense of assault with intent to

17  commit rape.  The Ninth Circuit has "held that the failure of the jury to convict on all counts is

18  the best evidence of the jury's ability to compartmentalize the evidence." Park v. California, 202

19  F.3d 1146, 1150 (9th Cir. 2004) (internal quotation marks and citations omitted).  In this case,

20  the jury did not convict Petitioner on two counts and found Petitioner guilty of a lesser included

21  offense on a third count.  Petitioner was not convicted of one count of the charges that arose from

22  the incident with Sarah/Alisha and one count that arose from the incident involving Melissa.

23  This constitutes strong evidence that Petitioner was not prejudiced by the consolidation of these

24  ─────────────────

25  misjoinder had a substantial and injurious effect or influence in determining the jury's verdict in
26  ultimately finding Petitioner guilty on the counts for which he was convicted.

two cases and the trial court's denial of the motion for severance.  See id. (stating that the jury did not convict petitioner of two counts, which constituted "strong evidence" that petitioner "was not prejudiced by the admission of  evidence which was possibly irrelevant with regard to some of the counts).  Petitioner was also not convicted of arguably the most inflammatory charge of assault with intent to commit rape.  Instead, the jury convicted Petitioner of the lesser included offense of simple assault.

Furthermore, any possible prejudice was limited through the jury instructions.  See Lane, 474 U.S. at 450 n. 13 (concluding, in a case regarding misjoinder of defendants, that a "carefully crafted limiting instruction" may reduce prejudice "to the minimum" and that "[w]e cannot necessarily assume that the jury misunderstood or disobeyed such instructions").  First, Petitioner's jury was specifically instructed that they had to decide each count separately.  (See Reporter's Tr. at p. 1749.)  Additionally, they were instructed that "each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt."  (Id. at p. 1730.)  The jury is deemed to have followed these instructions.  See Weeks v. Angelone, 528 U.S. 225, 234 (2000).

Petitioner also asserts that he suffered prejudice because it affected his right to testify in one case, but not the other.  According to Petitioner, due to his prior convictions, he did not want to testify with respect to the Alisha/Sarah charges but wanted to testify in the charges arising out of the Melissa incident.  In support of this argument, Petitioner relies on United States v. Nolan, 700 F.2d 479 (9th Cir. 1983).  In Nolan, the Ninth Circuit explained that to establish manifest prejudice, the petitioner "must show that he has [1] important testimony to give on some counts and [2] a strong need to refrain from testifying on those he wants severed."  Id. at 483.  Petitioner's argument does not establish the requisite level of prejudice.  First, Petitioner's theory of what transpired between him and Melissa on the regional rail train was already brought in through Officer Johnson's testimony.  Officer Johnson testified as to what Petitioner had told him had transpired between him and Melissa.  (See Reporter's Tr. at p. 898-915.)  Petitioner's

1   testimony was therefore not necessarily "important" because his statement to police was already

2   part of what the jury heard at trial.  His testimony would have merely denied the victim's

3   testimony and challenged her credibility.

4          Additionally, Petitioner failed to demonstrate a "strong need to refrain from testifying on

5   [the charges] he wants severed." Nolan, 700 F.2d at 483.  Petitioner sought to avoid cross-

6   examination with respect to the Alisha/Sarah charges because it would open the door to him

7   being impeached with a prior robbery conviction.  However, protecting the Petitioner's right to

8   testify selectively does not constitute a strong reason to refrain from testifying.  Similar to Nolan,

9   Petitioner "in effect . . . asks this court to allow him to choose his strategic weapons without

10  regard to the needs of the judicial system. [Petitioner's] desire to preserve his options does not

11  meet the . . . standard of a 'strong need to refrain from testifying.'" Id.

12         For the foregoing reasons, Petitioner is not entitled to federal habeas relief on this Claim.

13  He has not shown that the consolidation of the charges and the denial of the severance motion

14  had a substantial or injurious effect or influence in determining the jury's verdict.

15         Within Claim II, Petitioner also raises a claim of a denial of reciprocal discovery.

16  Petitioner argues that the prosecution should have turned over police reports which he states

17  contained exculpatory and impeachment evidence in a reciprocal manner.  (See Pet'r's Pet. at p.

18  35-36.)  He asserts that the police reports contained information concerning the prior arrests and

19  convictions of Sarah, which if they had been turned over to Petitioner in a timely manner, would

20  have allowed his trial counsel to proceed with trial on June 9, 2005.  (See id. at p. 36.)  The last

21  reasoned decision on this argument was from the Superior Court of California, County of

22  Sacramento decision which analyzed Petitioner's state habeas petition.  That court stated as

23  follows:

24         As an initial matter, habeas corpus cannot serve a second appeal or
           a substitute appeal.  (In re Harris (1993) 5 Cal.4th 813, 928.)  This
25         rule coves matters that could have been raised on appeal but were
           not as well as matters that were raised on appeal and decided.
26         (Ibid.; see also In re Dixon (1953) 41 Cal.2d 756, 759; In re

1    <u>Waltruesavi</u> (1965) 62 Cal.2d 218, 225.)

2    Petitioner could have appealed <u>Brady</u> error by the prosecutor, any
     tactical error by his counsel or error by the court and comments by
3    the prosecutor regarding evidence about whether petitioner had
     taken one or both of the watches at issue in the robbery counts.  In
4    fact, petitioner asked his attorney to appeal these matters, and his
     attorney explained why he thought they were not proper subjects
5    for appeal.  They were not issues on which petitioner was likely to
     prevail.  In any case, whether a valid argument existed or not,
6    issues that could have been raised on appeal cannot be the subject
     of a later habeas claim.

7

8    (Resp't's Lodged Doc. 10 at p. 1.)

9          Respondent argues that Petitioner's argument related to a lack of reciprocal discovery is

10   procedurally defaulted.  However, because Petitioner's argument related to a lack of reciprocal

11   discovery is without merit, the procedural default argument raised by Respondent with respect to

12   this issue will not be addressed.  <u>See</u> <u>Lambrix v. Singletary</u>, 520 U.S. 518, 525 (1997); <u>Franklin</u>

13   <u>v. Johnson</u>, 290 F.3d 1223, 1232 (9th Cir. 2002) ("Procedural bar issues are not infrequently

14   more complex than the merits issues presented by the appeal, so it may well make sense in some

15   instances to proceed to the merits if the result will be the same.").

16         In <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), the Supreme Court held that "the

17   suppression by the prosecution of evidence favorable to an accused upon request violates due

18   process where the evidence is material either to guilt or to punishment, irrespective of the good

19   faith or bad faith of the prosecution."  Impeachment evidence, as well as exculpatory evidence,

20   falls within the <u>Brady</u> rule, and the prosecutor is obliged to disclose both, even in the absence of

21   a specific discovery request.  <u>See</u> <u>United States v. Bagley</u>, 473 U.S. 667, 676-77 (1985).  "There

22   are three components to a true <u>Brady</u> violation:  The evidence at issue must be favorable to the

23   accused, either because it is exculpatory, or because it is impeaching; that the evidence must have

24   been suppressed by the State, either willfully or inadvertently, and prejudice must have ensued."

25   <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999).

26         The prejudice element of a <u>Brady</u> inquiry is also described as "materiality," i.e., that "the

22

1  suppressed evidence must be material to the guilt or innocence of the defendant." United States

2  v. Jernigan, 492 F.3d 1050, 1053 (9th Cir. 2007) (en banc).  Evidence is considered material

3  under Brady only if there is "a reasonable probability that, had the evidence been disclosed to the

4  defense, the result of the proceeding would have been different." Kyles v. Whitley, 514 U.S. 419,

5  433-34 (1995) (internal quotation marks and citation omitted).  A "reasonable probability" means

6  a probability "sufficient to undermine confidence in the outcome" of the trial.  Bagley, 473 U.S.

7  at 682.  Furthermore, materiality under Brady requires that the undisclosed information or

8  evidence be admissible or lead to admissible evidence.  See Wood v. Bartholomew, 516 U.S. 1,

9  5-7 (1995) (per curiam) (holding that polygraph test rests were not material under Brady because

10  the results were inadmissible under state law and therefore were not "evidence," and because the

11  polygraph results would not have led to any additional admissible evidence).

12      Petitioner admits in his habeas petition that the prosecutor turned over the purported

13  Brady material before his trial began in December 2005.  (See Pet'r's Pet. at p. 34 ("Only after

14  the district attorney, did finally fulfill his discovery obligation; turning over discovery and Brady

15  material to defense on October 20, 2005.").)  Petitioner continues in his habeas petition by

16  explaining that, "[o]nly then was petitioner's counsel able to locate crucial defense

17  witnesses:  Alexandra Gaffney, Pennie Powell and Natalia Castro who did in fact speak with

18  defense private investigator, some two weeks later were statements taken and 'key evidence' was

19  recovered."  (Id. at p. 35.)

20      Petitioner is not entitled to federal habeas relief on this argument.  As his habeas petition

21  makes clear, he was given the discovery that he sought before trial commenced in 2005.  Thus,

22  he has not shown the relevant "materiality" under Brady because the evidence was in fact turned

23  over to Petitioner before trial and Petitioner purportedly used this information to prepare for trial.

24  Accordingly, Petitioner is not entitled to federal habeas relief on any of his arguments within

25  Claim II.

26  //

C.  Claim III

In Claim III, Petitioner asserts that his right to a speedy trial was violated because the charges from the two incidents were consolidated.  He states that he was denied the right to a speedy trial in the case involving the Melissa incident.  As previously stated, the California Court of Appeal rejected this argument by stating the following:

> Defendant contends that consolidation meant that he was required to choose between his right to speedy trial and his right to the effective assistance of counsel.  Courts have often commented on the inherent tensions between these two rights.  (See People v. Frye (1998) 18 Cal.4th 894, 938-940 and cases cited therein.)  But 'hard choices are not unconstitutional.'  (Id. at p. 940; see also People v. Kiney (2007) 151 Cal.App.4th 807, 814 [Constitution does not preclude requiring defendant to choose between competing rights if election does not impair "to an appreciable extent" the policies behind these rights].)
>
> Here, defendant's own actions removed any potential conflict.  Rather than asserting his right to a speedy trial or moving to dismiss his case for violation of this right, defendant instead waived time.  By consenting to continuances, defendant removed any conflict between his right to speedy trial and right to competent counsel.  (People v. Frye, supra, 18 Cal.4th at p. 939; see also People v. Seaton (2001) 26 Cal.4th 598, 633-634.)

(Slip Op. at p. 7.)

The Sixth Amendment provides, in part:  "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. CONST. amend. VI.  In interpreting this Amendment, the Supreme Court has rejected rigid timing requirements and has instead adopted a balancing test which "compels courts to approach speedy trial cases on an ad hoc basis.  See Barker v. Wingo, 407 U.S. 514, 530 (1972) ("We cannot say how long is too long in a system where justice is supposed to be swift but deliberate."  In Barker, the Supreme Court identified "some factors which courts should assess in determining whether" a petitioner has been deprived of his right to a speedy trial.  Id.  Those factors include:  (1) the length of the delay; (2) the reasons for the delay; (3) the petitioner's assertion of his right; and (4) the prejudice to the petitioner.  See id.  The Supreme Court emphasized however that the factors do not have

"talismanic qualities" and that no single factor is a "necessary or sufficient condition to the finding of a depravation of the right of speedy trial." Id. at 533.  "Courts must still engage in a difficult and sensitive balancing process."  Id. (footnotes omitted).

With respect to the first factor, length of delay, the Supreme Court has explained that, "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Id. at 530.  In Doggett v. United States, 505 U.S. 647, 652 n. 1 (1992), the Supreme Court observed that lower courts had generally found post-accusation delay presumptively prejudicial "as it approaches one year."  The charges against Petitioner were initially brought in April 2005.  Trial on the charges was conducted approximately eight months later in December 2005.  Accordingly, as the length of the post-accusation delay was less than one year, this factor does not weigh in favor of Petitioner.

With respect to the second factor, the reason for the delay, "delay attributable to the defendant's own acts or to tactical decisions by defense counsel will not bolster defendant's speedy trial argument."  McNeely v. Blanas, 336 F.3d 822, 827 (9th Cir. 2003).  Petitioner admits that he waived time at the June 9, 2005 hearing (see Clerk's Tr. at p. 191.).  However, he asserts that he only did so due to the improper consolidation of the two cases as his counsel was ready to go to trial on the counts involving the Melissa incident but not the counts involving the Alisha/Sarah incident.  As previously explained, Petitioner is not entitled to habeas relief on his purported improper consolidation argument.  In addition to seeking and receiving a continuance at the June 9, 2005 hearing, Petitioner's trial counsel also received a five-week continuance in the fall of 2005 as she stated during a November 10, 2005 conference with the trial court. (See Reporter's Tr. at p. 1 ("I'm not sure if the Court recalls, but approximately – I want to say four weeks ago, I had sought a six-week continuance in this matter because I was not prepared. As a compromise, we set it for last week.").)  In light of the fact that Petitioner chose to waive time a few times during the eight-month period between when the charges were brought and when his trial commenced, the second Barker factor also does not weigh in favor of Petitioner.

Under the third factor, a court analyzes whether Petitioner previously asserted his right to a speedy trial.  As previously mentioned, Petitioner's counsel sought and received continuances in this case once the cases were consolidated.  Petitioner asserts that due to the consolidation of the cases, he was forced to choose between his speedy trial rights and his right to effective assistance of counsel.  However, as previously explained, Petitioner is not entitled to habeas relief on his argument that the consolidation was improper.  Accordingly, this factor also does not weigh in favor of Petitioner.

Finally, the fourth Barker factor requires the court to analyze the prejudiced suffered by the petitioner.  Establishing actual prejudice is not a prerequisite for relief, rather, it is one factor to be weighed in the Barker balancing test.  See Doggett, 505 U.S. at 655 ("[A]ffirmative proof of particularized prejudice is not essential to every speedy trial claim.").  The Supreme Court identified three particular interests that are at issue when analyzing this factor:  (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired."  Barker, 407 U.S. at 532.  "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system."  Id.  Petitioner does not address the first two factors in his habeas petition.  Furthermore, Petitioner does not show that his defense was impaired by the trial occurring approximately eight months after the charges were brought against Petitioner.  Accordingly, the fourth Barker factor does not weigh in Petitioner's favor.

After analyzing and weighing all of the relevant Barker factors, Petitioner fails to show that he is entitled to federal habeas relief on his speedy trial claim in Claim III.  Accordingly, Claim III should be denied.

D.  Claim IV

In Claim IV, Petitioner asserts that his doubled prison term and five-year prison term enhancement under the three strikes law must be reversed because the record failed to show under the totality of the circumstances that his plea to the prerequisite serious felony was

knowingly, intelligently and voluntarily entered.  Petitioner raised this Claim on direct appeal and

the California Court of Appeal analyzed it as follows:

> In 1999, defendant pleaded no contest to a charge of robbery, and that conviction was charged as a prior in this prosecution.  At sentencing, defendant sought to strike the prior, asserting that his plea was not knowing and voluntary because he did not know that he was pleading to a strike.  The trial court denied defendant's motion, finding that defendant was properly advised.
>
> On appeal, defendant renews his claim of error.  The transcript of the 1999 plea proceeding supports the trial court's determination.  Before taking defendant's plea, Judge Ransom asked defendant if he understood his rights and the consequences of his plea:
>
> "[THE COURT]:  In particular, do you understand the nature of the crime; that is, the elements of 211 of the Penal Code, which is robbery in the second degree?  Do you realize that?
> "[THE DEFENDANT]:  Yes, sir.
> "[THE COURT]:  Now, in the future, this will be both a strike and a serious felony.  Do you understand that?  Only if you violate in the future.  Do you understand that?
> "[THE DEFENDANT]:  Right now I don't have a strike if I plead to this?
> "[THE COURT]:  Right.  You are not pleading to a strike.  But, in the future, this will be a strike for any future felony.  Do you understand that?
> "[THE DEFENDANT]:  Yeah."
>
> Defendant asserts that the court erred in telling defendant that he was "not pleading to a strike," and that this misstatement resulted in a plea that was not intelligently and knowingly entered.  He acknowledges that a court does not ordinarily have to advise a defendant of the collateral consequences of a plea, such as the possibility of increased punishment in the future (see People v. Arnold (2004) 33 Cal.4th 294, 309), but argues that it was the court's misadvisement that lead him to enter his plea, rendering it involuntary and unknowing.
>
> Defendant's claim selectively focuses on one sentence to the exclusion of others, and ignores the full context of the court's comment.  Both before and after the sentence defendant cites, the court explicitly advised defendant that "this will be a strike for any future felony," and defendant replied that he understood.  Contrary to defendant's characterizations, Judge Ransom's comments were neither misleading nor ambiguous.  The trial court in this case properly concluded that defendant's earlier plea was entered voluntarily and intelligently, and therefore denied defendant's motion to strike this prior.  There was no error.

1    (Slip Op. at p. 15-16.)

2         Respondent is correct that Claim IV is non-cognizable in this federal habeas proceeding.

3    In Lackawanna County District Attorney v. Coss, 532 U.S. 394, 403-04 (2001), the Supreme

4    Court explained that:

5              once a state conviction is no longer open to direct or collateral
               attack in its own right because the defendant failed to pursue those
6              remedies while they were available (or because the defendant did
               so unsuccessfully), the conviction may be regarded as conclusively
7              valid . . . . If that conviction is later used to enhance a criminal
               sentence, the defendant generally may not challenge the enhanced
8              sentence through a petition under § 2254 on the ground that the
               prior conviction was unconstitutionally obtained.

9

10   In Coss, the Supreme Court stated that a petitioner can challenge a prior conviction used to

11   enhance the petitioner's current sentence only where:  (1) there was a failure to appoint counsel

12   in violation of the Sixth Amendment; or (2) the petitioner cannot be faulted for failing to obtain a

13   timely review of a Constitutional claim, either because a state court, without justification, refused

14   to rule on a Constitutional claim properly presented to it, or because the petitioner uncovered

15   "compelling evidence" of his innocence after the time for review had expired that could not have

16   been timely discovered.  See 532 U.S. at 403-05.  Neither of these exceptions are implicated in

17   this case where Petitioner has asserted in Claim IV that his plea on the prior robbery conviction

18   was not knowing and intelligent.  Accordingly, Claim IV should be denied as it is not cognizable

19   in these federal habeas proceedings.

20        E.  Claim V

21        In Claim V, Petitioner argues that his Constitutional rights under the Sixth and Fourteenth

22   Amendments were violated when the trial court precluded relevant, reliable exculpatory evidence

23   on Petitioner's behalf.  Specifically, Petitioner asserts that Brian Ridge should have been allowed

24   to testify regarding the underlying facts that gave rise to a prior disturbing the peace conviction

25   against Melissa that was admitted at trial as well as his testimony that Melissa threatened him

26   over the phone.  Petitioner argues this evidence was important to impeach Melissa's credibility.

The last reasoned decision on this Claim was from the California Court of Appeal on direct

appeal which stated the following:

> Defendant contends that the trial court erred in precluding
> exculpatory testimony from Brian R., Melissa's former boyfriend.
> We disagree.

> At trial, Melissa described a dispute with her former boyfriend.
> Melissa said that after Brian threw her out of the house, she
> unsuccessfully tried to put a hose of running water into his car.
> She then knocked on a door window with her fist and broke it.  She
> denied biting Brian but acknowledged that she was charged with
> battery on a person and entered a plea to disturbing the peace.
> Defense counsel sought to call Brian as a witness to impeach
> Melissa's credibility, asserting that Melissa's version of these
> events was not completely truthful and that Melissa was often
> physically assaultive and acted as the aggressor.

> The prosecutor moved to preclude or limit Brian's testimony.  He
> noted that Melissa had admitted engaging in conduct that resulted
> in her conviction for disturbing the peace, and he argued that
> Brian's testimony would essentially result in a minitrial over the
> details of this other event.

> The trial court questioned defense counsel about the purpose of
> having Brian testify, and counsel explained that she wanted to
> show that Melissa was not completely honest in testifying about
> this event.  The court asked, "So you want to do another trial on
> that incident?"  Defense counsel responded, "Essentially."  The
> court refused to permit any more detail about the incident, noting
> that Melissa had admitted the relevant acts.

> Defense counsel continued to press for the admission of Brian's
> testimony by raising several related issues.  At one point, counsel
> briefly referenced an apparent effort by Melissa to persuade Brian
> to change his court testimony about their disturbance.  Counsel
> argued that this was relevant to Melissa's credibility as a witness
> and "show[ed] her manipulation."  The prosecutor countered that
> Melissa had not been asked about this conversation with Brian and
> that the prosecutor had not raised this issue before.  The court
> reiterated its decision to exclude Brian's testimony.

> The issue was revisited on the next trial date.  Defense counsel said
> that Brian was afraid to testify because of threats from Melissa and
> her family.  Brian had telephoned the investigator four times and
> left messages that he was getting threats "from Melissa . . . or
> Melissa['s] family."  He in turn threatened to hurt or kill the
> investigator for getting him involved in the case.

> The prosecutor responded that evidence about these threats was

29

speculative and would require another minitrial to determine if they had been made, who had made them, and whether Brian had then threatened the investigator.

The trial court refused to permit this testimony.  It reiterated that Melissa had admitted her prior conduct and ruled that additional evidence about that incident or the threats that were now "going back and forth" would not be admitted "unless someone can connect them up better than what they've been connected up to so far."

Defendant contends that the court's rulings were erroneous and that Brian's testimony should have been admitted.  The claim is unpersuasive.

The parties agree that the court's ruling was based on relevancy concerns and Evidence Code section 352.  Only relevant evidence is admissible.  (Evid. Code, § 350.)  "Under Evidence Code section 352, the trial court enjoys broad discretion in assessing whether the probative value of particular evidence is outweighed by concerns of undue prejudice, confusion or consumption of time. [Citation.}  Where . . . a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal, *except* on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice. [Citations.]' [Citation.]" (People v. Rodrigues (1994) 8 Cal.4th 1060, 1124-1125.)

The trial court concluded that any link between the alleged threats to Brian and Melissa's credibility was entirely speculative.  According to Brian's message to the investigator, the threats were either from Melissa or her family.  Defendant acknowledges that both the content of the threats and their source were unknown.  Evidence which produces only speculative inferences is irrelevant.  (People v. Babbitt (1988) 45 Cal.3d 660, 682.)  The trial court properly determined that without a better connection to Melissa, this evidence was irrelevant and therefore inadmissible.

Similarly, the trial court properly excluded Brian's testimony about the altercation with Melissa.  Defense counsel forthrightly admitted that the admission of Brian's testimony would essentially involve a minitrial on this earlier incident.  Melissa had already described the event, her actions and intent at the time, and acknowledged she had been convicted of disturbing the peace.  Testimony from Brian would, in large part, be duplicative and time-consuming in what was already a very protracted trial.  The court acted well within its discretion under Evidence Code section 252 to exclude Brian's testimony.  There was no error.

(Slip Op. at p. 9-11.)

1      Respondent first argues that to the extent Petitioner asserts a due process challenge under

2  the Sixth and Fourteenth Amendments within Claim V, it is unexhausted because he did not raise

3  it in his petition for review to the California Supreme Court.  More specifically, Respondent

4  asserts that Petitioner only referenced "federal constitutional law" in discussing this Claim before

5  the California Supreme Court.

6      Respondent's lack of exhaustion argument is unpersuasive.  The petition for review cites

7  to a few cases within its discussion of this Claim.  Among the citations included by Petitioner

8  were Washington v. Texas, 388 U.S. 14 (1967) and Webb v. Texas, 409 U.S. 95 (1972).  In both

9  of those cases, it was noted that:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.  Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.  *This right is a fundamental element of due process of law.*

15  Webb, 409 U.S. at 98 (emphasis added) (quoting Washington, 388 U.S. at 19).  Accordingly, this

16  Claim is deemed exhausted.  See generally, Castillo v. McFadden, 399 F.3d 993, 999 (9th Cir.

17  2005) ("In short, the petitioner must have either referenced specific provisions of the federal

18  constitution or cited to federal or state cases involving the legal standard for a federal

19  constitutional violation . . . . it is not enough to raise a state claim that is analogous or closely

20  similar to a federal claim.").

21      To the extent that Petitioner contends that the state court improperly excluded the

22  evidence from Brian based on state law, he is not entitled to federal habeas relief.  See Estelle,

23  502 U.S. at 68 (mere errors in the application of state law do not warrant the issuance of a federal

24  writ of habeas corpus).

25      Nevertheless, criminal defendants have a constitutional right to present relevant evidence

26  in their own defense.  See Crane v. Kentucky, 476 U.S. 683, 690 (1986).  This right comes from

both the right to due process under the Fourteenth Amendment, see Chambers v. Mississippi, 410

U.S. 284, 294 (1973), and the right "to have compulsory process for obtaining witnesses in his

favor" provided by the Sixth Amendment.  See Washington, 388 U.S. at 23.  However, "[a]

defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable

restrictions," such as evidentiary and procedural rules.  See United States v. Scheffer, 523 U.S.

303, 308 (1998).  "[S]tate and federal rulemakers have broad latitude under the Constitution to

establish rules excluding evidence from criminal trials."  Id.  The Supreme Court approves of

"well-established rules of evidence [that] permit trial judges to exclude evidence if its probative

value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or

potential to mislead the jury."  Holmes v. South Carolina, 547 U.S. 319, 326 (2006).  Evidentiary

rules do not violate a defendant's constitutional rights unless they "infring[e] upon a weighty

interest of the accused and are arbitrary or disproportionate to the purposes they are designed to

serve."  Id. at 324 (internal quotation marks and citation omitted); see also Scheffer, 523 U.S. at

315 (determining that the exclusion of evidence pursuant to a state evidentiary rule is

unconstitutional only where it "significantly undermined fundamental elements of the accused

defense").  Generally, it takes "unusually compelling circumstances . . . to outweigh the strong

state interest in administration of its trials."  Perry v. Rushen, 713 F.2d 1447, 1452 (9th Cir.

1983).  The Supreme Court has expressed its:

> traditional reluctance to imposed constitutional constraints on
> ordinary evidentiary rulings by state trial courts.  In any given
> criminal case the trial judge is called upon to make dozens,
> sometimes hundreds of decisions concerning the admissibility of
> evidence . . . . [T]he Constitution leaves to the judges who must
> make these decisions wide latitude to exclude evidence that is
> repetitive . . . only marginally relevant or poses an undue risk of
> harassment, prejudice, [or] confusion of the issues.

Crane, 476 U.S. at 689-90 (internal quotation marks omitted).  Several factors are considered

when determining whether a petitioner's due process rights were violated as a result of evidence

excluded at trial:  (1) the probative value of the excluded evidence on the central issue; (2) its

1    reliability; (3) whether it is capable of evaluation by the trier of fact; (4) whether it is the sole

2    evidence on the issue or merely cumulative; and (5) whether it constitutes a major part of the

3    attempted defense.  See Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir. 2004).  Furthermore, even

4    if the exclusion of evidence amounts to constitutional error, the erroneous exclusion of evidence

5    must have had a "substantial and injurious effect" on the verdict in order to justify federal habeas

6    relief."  Brecht v. Abrahamson, 507 U.S. 619, 623 (1993).  Thus, even if there was constitutional

7    error, Petitioner must show that the error resulted in actual prejudice.  See id.

8        Petitioner failed to demonstrate that the trial court's ruling on excluding Brian's

9    testimony of the incident which gave rise to Melissa's disturbing the peace conviction was an

10   unreasonable application of clearly established federal law.  As the state court explained,

11   Melissa's conviction for disturbing the peace was discussed at trial.  Furthermore, Melissa was

12   also questioned on other incidents which impeached her character such as her possession of

13   marijuana.  Melissa testified that she in fact was holding onto the marijuana so that she could sell

14   it. (See Reporter's Tr. at p. 703.)  Additionally, Melissa's credibility was also impeached with

15   her prior act of stealing cosmetics while at a Raley's in 2002.  (See id. at p. 705.)  Accordingly,

16   Petitioner failed to show that the trial court's exclusion of Brian's testimony regarding his

17   version of Melissa's disturbing the peace conviction was an unreasonable application of clearly

18   established federal law.  His testimony would have been cumulative on the issue that Melissa had

19   previously been convicted of disturbing the peace.  As explained by the state court and admitted

20   by Petitioner's trial counsel, admitting his testimony on his recollection of the incident which

21   gave rise to the disturbing the peace conviction would have amounted to retrying Melissa on her

22   disturbing the peace conviction.  Melissa was questioned about this incident and Petitioner was

23   also permitted to impeach Melissa's credibility based on additional other prior acts reflecting her

24   credibility and truthfulness.  Based on these reasons, Petitioner is not entitled to federal habeas

25   relief based on the preclusion of this testimony.

26       Petitioner also argues that Brian should have been allowed to testify that threats he was

33

receiving were from Melissa.  Nevertheless, Petitioner fails to show that the preclusion of this

testimony it was an unreasonable application of clearly established federal law or that the trial

court's decision was based on an unreasonable determination of the facts.  The state court

rejected this projected testimony because it determined that it was entirely speculative for Brian

to testify that the threats he received were from Melissa.  The state court determined that

Petitioner failed to show a connection that the purported threats were from Melissa or her family.

Petitioner does not show that this was an unreasonable determination of the facts before the state

court.

 For the foregoing reasons, Claim V should therefore be denied.

 F.  Claim VI

 In Claim VI, Petitioner asserts that the trial court erred when it failed to *sua sponte*

instruct the jury on the defense of claim of right on a robbery charge.  The last reasoned decision

on this Claim was from the California Court of Appeal on direct appeal which stated the

following:

> Defendant contends that the jury could have concluded from the
> evidence that Sarah gave the watch to defendant as a gift.
> Consequently, he argues, the trial court had a sua sponte obligation
> to instruct on claim-of-right as a defense.  Alternatively, he asserts
> that his attorney was ineffective in failing to request such an
> instruction.  Neither claim has merit.
>
> A trial court has a sua sponte duty to instruct on a particular
> defense if it appears that the defendant is relying on such a defense
> or if there is substantial evidence to support the defense and the
> defense is not inconsistent with the defendant's theory of the case.
> (People v. Maury (2003) 30 Cal.4th 342, 424.)
>
> "The claim-of-right defense provides that a defendant's good faith
> belief, even if mistakenly held, that he has a right or claim to
> property he takes from another negates the felonious intent
> necessary for convicting of theft or robbery."  (People v. Tufunga
> (1999) 21 Cal.4th 935, 938.)
>
> The evidence in this case did not warrant a sua sponte instruction
> on a claim-of-right defense, nor was counsel ineffective in failing
> to request one.

Alisha testified she bought the watch for Sarah as an Easter gift, and Sarah also testified that the watch was a gift from Alisha. Sarah told the investigator that she never bought a watch for defendant. Sarah testified that defendant asked to see Sarah's watch and Sarah let him wear it for a while. When she asked for it back, defendant said he was going to borrow the watch and would give it back to her the next time he saw her. Sarah protested, and Alisha told defendant to give the watch back to Sarah because she no longer wanted him to wear it. Defendant returned the watch, but later ripped it from Sarah's wrist and took it. Defendant told Alisha that she could have the watch back if she performed a sexual favor. He later apologized to Sarah, saying he would have given the watch back had Alisha not acted as she did.

There is no evidence that defendant had a good faith belief in his right to the watch and therefore no substantial evidence to support a claim-of-right defense.

In arguing otherwise, defendant suggests that the watch was actually a gift for defendant, and he notes that when Sarah tried on the watch at the mall, she commented, "I think [defendant] would like this." Defendant reads too much into Sarah's statement. Given the context of her remark and the other evidence presented at trial, her statement can only be interpreted as a belief that defendant would like the watch for Sarah, not that she was buying it for him.

The trial court had no sua sponte obligation to instruct on a claim-of-right defense. Nor can defense counsel be faulted for failing to request an instruction for which there was no evidentiary support.

(Slip Op. at p. 13-14.)

Respondent first argues that to the extent Claim VI includes a due process challenge, it is unexhausted. It is unnecessary to reach this issue as a claim can be denied on the merits where the claim is deemed to be not "colorable." See Cassett v. Stewart, 406 F.3d 614, 624 (9th Cir. 2005). For the following reasons, Petitioner has failed to meet that standard.

To receive federal habeas relief for an error in jury instructions, Petitioner must show that the error so infected the entire trial that the resulting conviction violates due process. See Henderson v. Kibbe, 431 U.S. 145, 154 (1977). "Due process requires that criminal prosecutions 'comport with prevailing notions of fundamental fairness' and that 'criminal defendants be afforded a meaningful opportunity to present a complete defense.'" Clark v. Brown, 450 F.3d

898, 904 (9th Cir. 2006) (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)).  Failure to

instruct on a defense theory of a case is only reversible error if the theory is legally sound and the

evidence in the case supports the instruction.  See Beardslee v. Woodfood, 358 F.3d 560, 577

(9th Cir. 2004).   Additionally, in order to obtain federal habeas relief on this claim, Petitioner

"must show that the alleged instructional error had substantial and injurious effect or influence in

determining the jury's verdict." Byrd v. Lewis, 566 F.3d 855, 860 (9th Cir. 2009) (internal

quotation marks and citations omitted), cert. denied, – U.S. –, 120 S.Ct. 2103, 176 L.Ed.2d 733

(2010).  "A substantial and injurious effect means a reasonable probability that the jury would

have arrived at a different verdict had the instruction been given." Id. (internal quotation marks

and citation omitted). In this case, the burden on Petitioner is especially heavy where the alleged

error involves the failure to give an instruction.  See id.  An omission or an incomplete

instruction is less likely to be prejudicial than a misstatement of law.  See Henderson, 431 U.S. at

155; see also Villafuerte v. Stewart, 111 F.3d 616, 624 (9th Cir. 1997).

"The claim-of-right defense is based on the sounds concept that a person who acts under a

good faith belief that he is repossessing his own property lacks felonious intent to deprive

another of his or her property." People v. Williams, 176 Cal. App. 4th 1521, 1528, 98 Cal. Rptr.

3d 770 (2009) (citing People v. Tufunga, 21 Cal. 4th 935, 945-46, 90 Cal. Rptr. 2d 143, 987 P.2d

168 (1999)).  In this case, the California Court of Appeal determined that there was insufficient

evidence to support an instruction on the claim-of-right defense.  Petitioner failed to show that

this was an unreasonable application of clearly established federal law for the reasons stated by

the California Court of Appeal.  See Beardslee, 358 F.3d at 577 (failure to instruct on a defense

theory is reversible error only if the evidence in the case makes it applicable).

Petitioner also does not show that the decision was the result of an unreasonable

determination of the facts.  The California Court of Appeal determined that Petitioner's reliance

on the statement made at the mall that regarding the fact that Petitioner "would like" the watch

was insufficient to establish the giving of a claim of right instruction.  This was not an

unreasonable determination by the California Court of Appeal.  Petitioner also attempts to rely on

other pieces of evidence to support his argument that the court should have sua sponte instructed

the jury on claim-of-right.  He asserts that the evidence that Petitioner and Sarah were previously

involved in a sexual relationship further supports an argument of claim-of-right.  However, the

mere fact that Petitioner and Sarah may have been involved in a sexual relationship does not

warrant the trial court sua sponte instructing the jury on claim-of-right.  The status of their

relationship did not mean that Petitioner would have therefore had a good faith belief that the

watch was his own.  Accordingly, for the foregoing reasons, Claim VI should be denied.

G.  Claim VII

In Claim VII, Petitioner argues that the trial court violated his due process rights when it

failed to instruct the jury on the lesser included offense of attempted robbery.  The California

Court of Appeal analyzed this issue as follows:

> Count I of the information charged defendant with the robbery of
> Sarah.  The court instructed the jury on the elements of this offense
> as well as the lesser included offense of grand and petty theft.
> Defendant contends that because there was equivocal evidence on
> the element of asportation, the trial court also had a sua sponte
> obligation to instruct on the lesser included offense of attempted
> robbery.  We do not agree.
>
> "An instruction on a lesser included offense must be given only
> when the evidence warrants such an instruction.  [Citation.]  To
> warrant such an instruction, there must be substantial evidence of
> the lesser included offense, that is, 'evidence from which a rational
> trier of fact could find beyond a reasonable doubt' that the
> defendant committed the lesser offense.  [Citation.]  Speculation is
> insufficient to require the giving of an instruction on a lesser
> included offense.  [Citations.]  In addition, a lesser included
> instruction need not be given when there is no evidence that the
> offense is less than that charged."  (People v. Mendoza (2000) 24
> Cal.4th 130, 174.)
>
> Robbery is "the felonious taking of personal property in the
> possession of another, from his person or immediate presence, and
> against his will, accomplished by means of force or fear.  (§ 211.)
> "The taking element of robbery itself has two necessary elements,
> gaining possession of the victim's property and asporting or
> carrying away the loot."  (People v. Cooper (1991) 53 Cal.3d 1158,
> 1165.)  The asportation requirement is met even if the movement is

37

only very slight.  (Ibid.; People v. Vargas (2002) 96 Cal.App.4th 456, 463.)

In arguing that the court had a sua sponte obligation to instruct on the lesser included offense of attempted robbery, defendant contends that the jury could have concluded that no asportation occurred when defendant took Sarah's watch.  He is wrong. Defendant forcibly removed the watch from Sarah's wrist while they were standing by the futon in the living room.  Defendant then walked toward the door, where he pinned Alisha.  Defendant still had the watch in his possession at this point, as evidenced by his remark that he would return the watch to her if she performed a sexual act.  Defendant then chased Alisha into her room, and at one point, pushed her into her closet.  Sarah's watch was later found in a laundry basket that had been in this closet.

It is immaterial whether defendant moved the watch from one room in the apartment into another, or simply moved it from one location in the living room to another.  In either case, the asportation element was met.  Contrary to defendant's claim, Sarah's speculative statements that she thought Alisha might have grabbed the watch from defendant during their struggle does not alter this conclusion.  The movement from the futon to the door, where the struggle between Alisha and defendant began, was sufficient to satisfy the asportation requirement for robbery.  (See People v. Nazzaro (1963) 223 Cal.App.2d 375 [money is carried away when it is removed from a cash register and given to robber].)  "A robbery has been committed if the stolen item 'is so within [the victim's] reach, inspection, observation, or control, that he could, if not overcome by violence or prevented by fear, retain his possession of it . . . . ' [Citation.] "'Asportation . . . may be fulfilled by wrongfully . . . removing property from the . . . control of the owner, . . . even though the property may be retained by the thief but a moment." [Citation.]'" (People v. Pham (1993) 15 Cal.App.4th 61, 67.)

Because the evidence established that the asportation requirement was met, the crime (if one occurred) was robbery.  Under these circumstances, the trial court had no obligation to instruct sua sponte on the lesser included offense of attempted robbery.

(Slip Op. at p. 12-13.)

Respondent first argues that to the extent that Claim VII relies on the Due Process Clause, the argument is unexhausted because it was not raised in his petition for review to the California Supreme Court.  The issue need not be reached however, as Petitioner has failed to show that his Claim is "colorable."  See Cassett, 406 F.3d at 624.

1    In a non-capital case, such as this one, the "[f]ailure of a state court to instruct on a lesser

2    offense fails to present a federal constitutional question and will not be considered in a federal

3    habeas proceeding." Bashor v. Risley, 730 F.2d 1228, 1240 (9th Cir. 1984). In Beck v.

4    Alabama, 447 U.S. 625, 638 (1980), the Supreme Court held that criminal defendants possess a

5    constitutional right to have the jury instructed on a lesser included offense in a capital case.

6    However, the Beck court expressly reserved the question of whether due process mandates the

7    application of the same right in non-capital cases. See id. at 638 n. 14. The right to have a jury

8    instructed on a lesser included offense is not clearly established federal law in a non-capital case

9    and consequently, the failure of a state trial court to instruct on a lesser included offense does not

10   present a federal constitutional question. See Windham v. Merkle, 163 F.3d 1092, 1106 (9th Cir.

11   1998).

12   In Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000), the Ninth Circuit stated that there

13   may be an exception to this general rule for adequate jury instructions on a defendant's defense

14   theory. However, even if Petitioner does possess this right, Petitioner still would not be entitled

15   to federal habeas relief on this argument. He failed to show that any purported instructional error

16   had a substantial and injurious effect on the jury's verdict.

17   Under California law, robbery is defined as: (1) the taking of personal property, (2) from

18   the person or immediate presence of another, (3) by means of force or fear, (4) with the intent to

19   permanently deprive the owner of the property. See People v. Lopez, 31 Cal. 4th 1051, 1058, 6

20   Cal. Rptr. 3d 432, 79 P.3d 548 (2003). Taking requires gaining possession of the victim's

21   property and asporting it or carrying it away. See People v. Cooper, 53 Cal. 3d 1158, 1161, 282

22   Cal. Rptr. 450, 811 P.2d 742 (1991). The movement or asportation need only be very slight.

23   See People v. Vargas, 96 Cal. App. 4th 456, 463, 116 Cal. Rptr. 2d 867 (2002) (citing Cooper, 53

24   Cal. 3d at 1165, 282 Cal. Rptr. 450, 811 P.2d 742; People v. Pham, 15 Cal. App. 4th 61, 65 "An

25   attempted robbery requires a specific intent to commit robbery and a direct, ineffectual act

26   (beyond mere preparation) toward its commission." People v. Lindberg, 45 Cal. 4th 1, 24, 82

1   Cal. Rptr. 3d 323, 190 P.3d 664 (2008).

2         As the California Court of Appeal noted, the incident involved Petitioner taking the

3   watch from Sarah's wrist and told her he would return the watch to her if she performed oral sex

4   on him.  The taking of the watch was supported by the evidence produced at trial such that, under

5   these circumstances, Petitioner did not show that the failure to give the attempted robbery

6   instruction has a substantial and injurious effect on the jury's verdict.  Accordingly, Claim VII

7   should be denied.

8                         VI.  REQUEST FOR AN EVIDENTIARY HEARING

9         Petitioner requested an evidentiary hearing in his federal habeas petition.  A court

10  presented with a request for an evidentiary hearing must first determine whether a factual basis

11  exists in the record to support petitioner's claims, and if not, whether an evidentiary hearing

12  "might be appropriate."  Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999); see also Earp v.

13  Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005).  A petitioner requesting an evidentiary hearing

14  must also demonstrate that he has presented a "colorable claim for relief."  Earp, 431 F.3d at

15  1167 (citations omitted).  To show that a claim is "colorable," a petitioner is "required to allege

16  specific facts which, if true, would entitle him to relief."  Ortiz v. Stewart, 149 F.3d 923, 934 (9th

17  Cir. 1998) (internal quotation marks and citation omitted).  In this case, an evidentiary hearing is

18  not warranted for the reasons stated in supra Part V.  Petitioner failed to demonstrate that he has

19  a colorable claim for federal habeas relief.  Moreover, the Supreme Court has recently held that

20  federal habeas review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the

21  state court that adjudicated the claim on the merits" and "that evidence introduced in federal

22  court has no bearing on" such review.  Cullen v. Pinholster, 131 S.Ct. 1388, 1398, 1400 (2011).

23  Thus, his request will be denied.

24                                VII.  CONCLUSION

25        Accordingly, IT IS HEREBY ORDERED that Petitioner's request for an evidentiary

26  hearing is DENIED.

1    For all of the foregoing reasons, IT IS RECOMMENDED that the petition for writ of

2  habeas corpus be DENIED.

3    These findings and recommendations are submitted to the United States District Judge

4  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

5  after being served with these findings and recommendations, any party may file written

6  objections with the court and serve a copy on all parties.  Such a document should be captioned

7  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

8  shall be served and filed within seven days after service of the objections.  The parties are

9  advised that failure to file objections within the specified time may waive the right to appeal the

10  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In any objections he

11  elects to file, Petitioner may address whether a certificate of appealability should issue in the

12  event he elects to file an appeal from the judgment in this case.  See Rule 11, Federal Rules

13  Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability

14  when it enters a final order adverse to the applicant).

15  DATED:  July 2, 2012

16

17

18                                          TIMOTHY J BOMMER
                                          UNITED STATES MAGISTRATE JUDGE
19

20

21

22

23

24

25

26